UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
WILLIAM BARNICKLE,

                     Plaintiff,

          v.

MATHER HOSPITAL and NORTHWELL
HEALTH INC.,

                    Defendants.
-----------------------------------------------------------------X

                                           **MEMORANDUM AND ORDER**
                                           24-CV-6953-SJB-LGD

**BULSARA, United States District Judge:**

Defendants Mather Hospital and Northwell Health Inc. (collectively, "Defendants") seek to dismiss as untimely the Complaint filed by Plaintiff William Barnickle ("Barnickle"), who asserts a claim of religious discrimination under the New York State Human Rights Law ("NYSHRL").  Even though the case was filed in federal court, Barnickle failed to commence his suit—by filing a summons as required by New York state law—before the state statute of limitations expired, a delay that requires dismissal with prejudice.

<u>BACKGROUND AND PROCEDURAL HISTORY</u>

Barnickle filed his Complaint on October 1, 2024.[1]  (Compl. dated Sep. 30, 2024, Dkt. No. 1).  He alleges that he was employed by Defendants as a Senior Developer and had been working entirely remotely since 2016.  (*Id.* ¶ 4).  On September 27, 2021,

---

[1] For the purpose of this motion, the Court is "required to treat" Barnickle's "factual allegations as true, drawing all reasonable inferences in favor of [him] to the extent that the inferences are plausibly supported by allegations of fact."  *In re Hain Celestial Grp., Inc. Secs. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).

Defendants implemented a policy making COVID-19 vaccination mandatory for employees, and Barnickle claims he was told that no religious accommodations would be granted.  (*Id.* ¶ 26).  Nonetheless, Barnickle expressed his religious objections, which he alleges were never considered, and he was ultimately terminated on October 1, 2021.  (*Id.* ¶¶ 27–29).  Barnickle brings a single claim for failure to accommodate his religious beliefs under the NYSHRL.  (*Id.* ¶¶ 41–82).

After Barnickle filed the Complaint, the Clerk issued a notice that no summons was provided and directed Barnickle to submit a proposed summons.  (Order dated Oct. 2, 2024).  Barnickle eventually did so, but not until almost two months later, on November 26, 2024.  (Proposed Summons, Dkt. No. 5).  The Clerk issued a summons—a standard federal court summons issued in this District—the following day.  (Summons Issued, Dkt. No. 6).  Defendant Northwell Health, Inc. was served on December 20, 2024, (Summons Returned Executed, Dkt. No. 7), and Defendant Mather Hospital was served on January 2, 2025, (Summons Returned Executed, Dkt. No. 8).

The Defendants requested a premotion conference ("PMC") in anticipation of a motion to dismiss, contending that this case is time-barred, since it was "commenced" within the meaning of New York law outside the relevant statute of limitations, due to the delay in filing the summons.  (*See* Defs.' Mot. for PMC dated Jan. 10, 2025, Dkt. No. 13 at 1–2; *see also* Pl.'s Opp'n to PMC dated Jan. 27, 2025, Dkt. No. 14).  The Court held the PMC on March 12, 2025, and directed full briefing on the issue of when this action was commenced for statute of limitations purposes.  (Min. Entry & Order dated Mar. 12, 2025).

DISCUSSION

"The lapse of a limitations period is an affirmative defense that a defendant must plead and prove."  *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 149 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 2792 (2025) (quotation omitted).  Although it is ordinarily raised in an answer, "a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Conn. Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 988 F.3d 127, 131–32 (2d Cir. 2021) (quotation omitted).  "To the extent the defense requires 'consideration of facts outside of the complaint,' however, it is 'inappropriate to resolve' at the pleading stage."  *Corley v. Rantab Enters. Inc.*, No. 25-0084, 2025 WL 2741735, at *1 (2d Cir. Sep. 26, 2025) (quoting *Michael Grecco Prods.*, 112 F.4th at 149–50).

"In diversity cases, state statutes of limitations govern the timeliness of state law claims, and state law determines the related questions of what events serve to commence an action and to toll the statute of limitations."  *Diffley v. Allied-Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990) (quotation omitted); *Brady v. IGS Realty Co. L.P.*, No. 20-3512, 2021 WL 4302737, at *2 (2d Cir. Sep. 22, 2021) ("When plaintiffs bring state-law claims in federal court, 'the timeliness of those claims is also a matter of state law.'" (quoting *Conn. Gen. Life Ins. Co.*, 988 F.3d at 136)).  The NYSHRL contains a three-year statute of limitations.  *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 260 (2d Cir. 2023) ("Under

3

the NYSHRL, claims must be filed within three years of the adverse employment action.").[2]

The parties do not dispute that this is a diversity case in which the Court must apply New York's three-year statute of limitations.  (Defs.' Mem. in Supp. of Mot. to Dismiss dated Apr. 9, 2025 ("Defs.' Mot."), Dkt. No. 22 at 1–2; Pl.'s Mem. in Opp'n to Mot. to Dismiss ("Pl.'s Opp'n"), Dkt. No. 26 at 6).  And Defendants do not raise any factual disputes about the date on which Barnickle's claim accrued; the parties agree that date is October 1, 2021.  (*See* PMC Tr. dated Mar. 12, 2025, Dkt. No. 27 at 16:24–17:6; Defs.' Mot. at 1; Pl.'s Mot. at 4).  The Complaint was filed exactly three years later, on October 1, 2024.  (Defs.' Mot. at 1; Pl.'s Mot. at 5).  Though it is possible to do so, *see* Fed. R. Civ. P. 4(b) ("On or after filing the complaint, the plaintiff may present a summons to the clerk[.]"), Barnickle did not seek a summons the same day he filed the Complaint.

The dispute in this case centers on what it means to "commence" an action under New York law.  At the root of this question is Barnickle's delay in seeking a summons — he did not file a proposed summons until almost two months after filing the Complaint. Defendants argue that New York law requires a plaintiff to file both a complaint *and* summons to "commence" a lawsuit — and interpose a claim so as to stop the statute of limitations clock.  (Defs.' Mot. at 1–3).

New York law determines "the timeliness of state law claims" as well as "the related questions of what events serve to commence an action and to toll the statute of

---

[2] Though not relevant here, the three-year deadline "is tolled during the period in which a complaint is pending before the New York State Department of Human Rights or with the EEOC."  *Banks*, 81 F.4th at 260.

4

limitations." *Diffley*, 921 F.2d at 423 (quotation omitted). New York law stops the statute of limitations clock when "the claim is interposed." N.Y. C.P.L.R. § 203(a) (McKinney 2025). If a case is initiated by filing,[3] as it was here, the claim is interposed when "the action is commenced." *Id.* § 203(c). "An action is commenced by filing a summons and complaint or summons with notice in accordance with [Rule 2102]."[4] *Id.* § 304(a). Rule 3 of the Federal Civil Rules, on the other hand, provides that "[a] civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3.

"Procedure is the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them, while substantive law is the law that governs the rights and obligations of individuals within a given jurisdiction." *Pappas v. Philip Morris, Inc.*, 915 F.3d 889, 894 (2d Cir. 2019) (quotation omitted). As every law student can attest, the *Erie* doctrine "stands for the proposition that, as a general matter, a federal district court sitting in diversity jurisdiction must apply the *substantive* law of the state in which it sits." *Id.* at 893 (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)); *see also Berk v. Choy*, 607 U.S. --, No. 24-440, 2026 WL 135974, at *3 (Jan. 20, 2026) ("The Rules of Decision Act directs federal courts to apply state substantive law, leaving federal law to cover the rest."). "Following that direction is harder than it looks, because determining whether a

---

[3] Actions may also be commenced in New York state courts by *service* of the summons, and separate provisions apply to those cases. *See* N.Y. C.P.L.R. § 203(b) (McKinney 2025).

[4] Rule 2102 further provides how and where papers are to be filed, and the clerk of court's mandate to accept them.

state law is substantive requires a court to enter '*Erie*'s murky waters.'"  *Berk*, 2026 WL

135974, at *3 (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S.

393, 398 (2010)).  "Where state and federal law are in conflict," a Court must "reconcile

those principles by asking whether the federal law or rule 'regulate[s] matters rationally

capable of classification as procedure.'"  *Pappas*, 915 F.3d at 894 (quoting *Shady Grove*,

559 U.S. at 406); *see also Berk*, 2026 WL 135974, at *6.  The Court must also then consider

"whether disregarding the law that would control in state court would significantly

affect the result of the litigation in federal court."  *Pappas*, 915 F.3d at 894.  And that

inquiry must be done in the context of "the twin aims" of *Erie*: "discouragement of

forum-shopping and avoidance of inequitable administration of the laws."  *Id.* (quoting

*Hanna v. Plumer*, 380 U.S. 460, 468 (1965)).

The analysis changes when the federal law in question is an applicable Federal

Rule of Civil Procedure—the Court must first analyze "whether [the] Federal Rule

displaces state law."  *Berk*, 2026 WL 135974, at *3.  "[W]hen a Federal Rule of Civil

Procedure is on point, a federal court bypasses *Erie*'s inquiry altogether.  That is because

the Rules of Decision Act dictates that state substantive law must yield if the

Constitution, a treaty, or a statute 'otherwise require[s] or provide[s].'"  *Id.* (quotation

omitted).  The heart of the analysis is whether the Federal Rule "answers the question in

dispute."  *Id.* (quoting *Shady Grove*, 559 U.S. at 398) (explaining that if it does, the

Federal Rule governs, so long as the Rule is valid under the Rules Enabling Act).

A different *Erie* analysis applies when there is no direct conflict between the

laws.  *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 752–53 (1980) ("Since there is no

6

direct conflict between the Federal Rule and the state law, the *Hanna* analysis does not apply.  Instead, the policies behind *Erie* and *Ragan* control the issue whether, in the absence of a federal rule directly on point, state service requirements which are an integral part of the state statute of limitations should control in an action based on state law which is filed in federal court under diversity jurisdiction."); *see also Morse v. Elmira Country Club*, 752 F.2d 35, 38 (2d Cir. 1984) (interpreting *Walker*).

Here, there is no direct collision between a Federal Rule and a state law, because the Federal Rule at issue does not "answer the same question" presented: when does an action commence for statute of limitations purposes?  Despite its title, "Commencing an Action," Rule 3 does not answer that question.  Rule 3 does not define commencement in the context of statutes of limitations.  As the Supreme Court explained 45 years ago:

> We rejected the argument that Rule 3 of the Federal Rules of Civil Procedure governed the manner in which an action was commenced in federal court for purposes of tolling the state statute of limitations. . . . Rule 3 simply states that '[a] civil action is commenced by filing a complaint with the court.'  There is no indication that the Rule was intended to toll a state statute of limitations, much less that it purported to displace state tolling rules for purposes of state statutes of limitations.  In our view, in diversity actions Rule 3 governs the date from which various timing requirements of the Federal Rules begin to run, but does not affect state statutes of limitations.

*See Walker*, 446 U.S. at 746, 750–51 (quoting Fed. R. Civ. P. 3); *see also Berk*, 2026 WL 135974, at *9 (Jackson, J., concurring in the judgment) (summarizing *Walker*'s holding that "Rule 3 . . . governs the date from which various timing requirements of the Federal Rules begin to run, but does not affect state statutes of limitations." (quotation omitted)).  Without a Federal Rule on point here, there is no direct conflict between federal and state laws, so the state law applies.  *See Walker*, 446 U.S. at 750 ("[W]e

recognized in *Hanna* that the present case is an instance where 'the scope of the Federal Rule [is] not as broad as the losing party urge[s], and therefore, there being no Federal Rule which cover[s] the point in dispute, *Erie* command[s] the enforcement of state law.'" (quotation omitted)).

Two Supreme Court cases are instructive.  The first is *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530 (1949).  In *Ragan*, the plaintiff initiated his federal lawsuit alleging a state tort claim by filing a complaint.  337 U.S. at 531.  Then, the clerk issued a summons, and the defendant was served a few months later.  *Id.*  But between the filing of the complaint and service of the defendant, the two-year statute of limitations under Kansas law had expired.  *Id.*  Kansas law specified that a lawsuit started only upon service of the summons: "[a]n action shall be deemed commenced . . . at the date of the summons which is served on [the defendant]."  *Id.* at 531 n.4.  Applying *Erie* and *Guaranty Trust Co. of New York v. York*, 326 U.S. 99 (1945), the Supreme Court noted that "if the present case were in a Kansas court it would be barred."  *Ragan*, 337 U.S. at 532.  And, because the service requirement was "an integral part of the Kansas statute of limitations," the Supreme Court held that complying only with federal law requirements for commencing a case—filing a complaint but not serving—did not pause the limitations period.  *Id.* at 533–34.  A federal court could not give a state law claim "longer life in the federal court than it would have had in the state court without adding something to the cause of action."  *Id.*  "This holding indicates that when the claim asserted in the federal court is based on a right created by state law, provisions of the state statute of limitations as to how the action is commenced, rather than Rule 3,

control in the federal court."  4 Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure § 1057 (4th ed. 2025).

The second is the previously cited *Walker*.  In *Walker*, the Court affirmed *Ragan*, found it indistinguishable, and came to the same conclusion.[5]  446 U.S. at 748–49.  As in *Ragan*, the statute of limitations lapsed between the filing of the complaint and service on the defendant, and the relevant Oklahoma law "[did] not deem the action 'commenced' for purposes of the statute of limitations until service of the summons on the defendant."  *Id.* at 742.  Noting that "Rule 3 simply states that '[a] civil action is commenced by filing a complaint with the court,'" it found "no indication that the Rule was intended to toll a state statute of limitations."  *Id.* at 750.

In summary, the *Erie* framework applicable when a federal rule is not in conflict with state law, and *Ragan* and *Walker*, two cases applying those principles, compel the conclusion here: compliance with Rule 3 means only that Barnickle "commenced" an action *in* federal court, not that he "commenced" it *under* state law.

As to that issue—whether the action was "commenced" under state law—*Ragan*, *Walker*, and the Second Circuit's decision in *Personis v. Oiler* were premised on finding that the contested requirement was an "integral" part of the relevant state limitations period:

> The statute of limitations establishes a deadline after which the defendant may legitimately have peace of mind; it also recognizes that after a certain period of time it is unfair to require the defendant to attempt to piece

---

[5]  An older district court decision, and the subsequent Second Circuit adoption of its reasoning, which predates *Walker* and suggests *Ragan* did not survive *Hanna*, appears to no longer have force.  *Sylvestri v. Warner & Swasey Co.*, 244 F. Supp. 524, 527 (S.D.N.Y. 1965), *aff'd,* 398 F.2d 598, 605–06 (2d Cir. 1968).

together his defense to an old claim.  A requirement of actual service promotes both of those functions of the statute.  It is these policy aspects which make the service requirement an 'integral' part of the statute of limitations both in this case and in *Ragan*.

*Walker*, 446 U.S. at 751–52 (citations omitted); *Ragan*, 337 U.S. at 534; *Personis v. Oiler*, 889 F.2d 424, 426 (2d Cir. 1989) ("In *Walker*, the Supreme Court required federal courts sitting in diversity to apply state service requirements that were an 'integral part of the state statute of limitations' in actions based on state law." (quoting *Walker*, 446 U.S. at 752–53)); *see also Converse v. Gen. Motors Corp.*, 893 F.2d 513, 516 (2d Cir. 1990) ("The intimate relationship between the purposes served by a state statute of limitations and its actual service requirement suggests the integrality of the service requirement.").

As to whether the summons requirement in this case is an "integral part of the state statute of limitations," the inquiry focuses on the statute and "pronouncements of the highest state court."  *Converse*, 893 F.2d at 515–16.  As noted, the New York statute of limitations clock stops when "the claim is interposed."  N.Y. C.P.L.R. § 203(a) (McKinney 2025).  If a case is initiated by filing, as is the case here, the claim is interposed when "the action is commenced."  *Id.* § 203(c).

New York law does not require service to commence an action.  *See Ruffin v. Lion Corp.*, 15 N.Y.3d 578, 582 (2010) ("[T]he payment of a filing fee and the filing of initiatory papers are the acts that commence an action or special proceeding, and *service* comes thereafter[.]" (citing N.Y. C.P.L.R. § 304(a)) (emphasis added)).  An action is "commenced by filing a summons and complaint or summons with notice."  N.Y.

10

C.P.L.R. § 304(a) (McKinney 2025);[6] *Matter of Gershel v. Porr*, 89 N.Y.2d 327, 330 (1996) ("In 1992, the Legislature converted New York civil practice in the Supreme and County Courts from a commencement-by-service to a commencement-by-filing system."), *superseded by statute on other grounds*, N.Y. C.P.L.R. § 2001, *as recognized in*, *Ruffin*, 15 N.Y.3d at 581.[7]

The text of CPLR sections 203 and 304 offers no assistance in determining the importance of the summons requirement. But decisions by the New York Court of Appeals reveal that the filing of a summons is indeed an integral component of the commencement rule, and by implication, the limitations period. *See, e.g.*, *Goldenberg v. Westchester Cnty. Health Care Corp.*, 16 N.Y.3d 323, 326, 328 (2011) (affirming that "under CPLR 304 a 'filing' that commences an action requires a summons" and concluding that "[g]iven the absence of a summons, there was 'a complete failure to file within the statute of limitations'"); *Gershel*, 89 N.Y.2d at 330; *see also* David D. Siegel & Patrick M. Connors, New York Practice § 60 (6th ed. 2024) ("In New York practice, the moment that commences an action is the filing of the summons and complaint or summons and

---

[6] "For purposes of this section, . . . filing shall mean the delivery of the summons with notice, summons and complaint or petition to the clerk of the court in the county in which the action or special proceeding is brought or any other person designated by the clerk of the court for that purpose." N.Y. C.P.L.R. § 304(c) (McKinney 2025).

[7] As Defendants contend, under the prior regime where actual service was necessary to commence an action, federal courts found that failure to serve created a statute of limitations bar. (Defs.' Mot. at 6); *see, e.g.*, *Probst v. Cordova*, No. 91-CV-8002, 1994 WL 320721, at *3 (S.D.N.Y. June 30, 1994) ("Accordingly, the Court finds that neither of the two defendants was properly served prior to the running of the applicable statute of limitations.").

11

notice. . . . The filing step is important to keep in mind because it's what satisfies the statute of limitations by interposing the claim.").

Thus, the filing of the complaint *and* summons—the complete set of "initiatory papers," *Gershel*, 89 N.Y.2d at 330—is an essential component of the New York state requirement.  Because failure to file a summons "would completely bar recovery in [the] suit if brought," in New York state court, the requirement is not "merely formal[] or negligibl[e]." *Walker*, 446 U.S. at 745.  And pursuant to *Erie*, the Court must apply that requirement in determining whether the plaintiff commenced his case before the limitations period.  Here, there is no dispute that Barnickle failed to file any summons before the limitations period, and the case must be dismissed, with prejudice.

There remains one last wrinkle that complicates this case.  What summons was Barnickle supposed to file—a summons that complies with New York state court procedure or a federal court summons?  The differences between the two are significant.  "The plaintiff's attorney issues and signs the summons in New York [state court], and under nothing more than the attorney's signature the summons is deemed official process of the court.  This is in contrast to federal practice where the clerk issues the summons." Siegel & Connors, *supra*, § 60.  In state court, the summons must specify the basis of venue and include the case number and date of filing with the clerk of court.  N.Y. C.P.L.R. § 305 (McKinney 2025).  A federal court summons, as Rule 4 enumerates, must among other requirements, name the court and the parties, notify the consequence of failing to appear and defend (including a default judgment), and state the name of the plaintiff's counsel or plaintiff if proceeding pro se.  *See* Fed. R. Civ. P. 4(a)(1)

12

("Contents."). And further complicating the issue is that in federal court, the plaintiff requests a summons from the Clerk, at least in this District, typically by filing a proposed summons on the docket, (*e.g.*, Proposed Summons filed Nov. 26, 2024, Dkt. No. 5), which the Clerk's office subsequently issues and enters on the docket if it is properly completed, (*e.g.*, Summons Issued filed Nov. 27, 2024, Dkt. No. 6). The plaintiff then files it after it is executed, i.e., after it has been served with the complaint upon a defendant. (*E.g.*, Summons Returned Executed filed Jan. 1, 2025, Dkt. No. 7).[8]

Had Barnickle filed a state court summons here and claimed that he did not need to comply with Rule 4, that would have been a misapprehension. The Federal Rules govern the *method* for requesting a summons and filing it. *Cf. Morse*, 752 F.2d at 38 ("The *Walker* and *Hanna* decisions demonstrate that (a) the running of limitations in this case is governed by the New York rule that limitations is tolled only by service of process, but (b) the Federal Rules control the proper method of effecting service."); *see* Fed. R. Civ. P. 4(b) ("Issuance. On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal."); *id.* R. 4(l)(1) ("Proving Service. . . . [P]roof of service must be made to the court."). But whether filing a state court summons would have satisfied the limitations period is a question not presented here, since there is no dispute that the proposed summons that Barnickle did file was on November 26, 2024, several months after the limitations period expired. *E.g.*, *Torre v. Brickey*, 278 F.3d 917, 920 (9th Cir. 2002) ("Under Oregon law, the action was not

---

[8] This process is explained in detail in the District's Case Opening Manual. *See* Eastern District of New York, *CM/ECF Electronic New Civil Case Opening Manual* 23–24, 30 (2018).

commenced until February 15, 2000, the date defendant was served with [the federal court] summons, and a date more than two years after October 20, 1997, the date the alleged battery was committed.  The district court therefore correctly applied Oregon law and properly dismissed the action as time-barred."); *Eades v. Clark Distrib. Co., Inc.,* 70 F.3d 441, 442 (6th Cir. 1995) ("The issue in this case is whether recent amendments to Rule 4 of the Federal Rules of Civil Procedure have brought the Rules into direct conflict with Kentucky law governing the commencement of actions [via issuance of summons].  Finding no conflict, we affirm the district court's holding that the state statute of limitation bars this litigation.").

*          *          *

The Supreme Court decided *Berk v. Choy* on January 20, 2026.  Because of its potential similarity to this case, the Court briefly addresses *Berk*'s facts.  *Berk* involved a state medical malpractice claim filed in federal court by way of diversity jurisdiction. 2026 WL 135974, at *2.  Delaware law required an affidavit of merit signed by a medical professional to accompany a medical malpractice complaint.  *Id.*  The plaintiff, who did not file an affidavit and was unable to do so in the extended time the district court granted, then claimed that the state law was unenforceable in federal court, because it displaced a Federal Rule of Civil Procedure: Rule 8, which "prescribes the information a plaintiff must present about the merits of his claim at the outset of litigation."  *Id.* at *3. The Supreme Court found the federal and state rules to be in direct conflict, because the affidavit requirement "demands more," since "[u]nder Rule 8, factual allegations are sufficient, but under the Delaware law, the plaintiff needs evidence too."  *Id.* at *4.  So, it

14

applied Rule 8: "Because Rule 8 and § 6853 answer the same question, Rule 8 governs so long as it is valid under the Rules Enabling Act . . . . To determine whether a Rule is valid under the Rules Enabling Act, the only question is whether it really regulates procedure.  Rule 8 does, so it governs, and Delaware's affidavit law does not apply in federal court."  *Id.* at *6–*7 (quotation omitted).

*Berk's* result does not compel a different conclusion here, because, as explained above, Rule 3 does not answer the question at issue.  *See Berk*, 2026 WL 135974, at *5; *see also id.* at *9 (Jackson, J., concurring in the judgment) (summarizing *Walker*'s holding that "Rule 3 . . . governs the date from which various timing requirements of the Federal Rules begin to run, but does not affect state statutes of limitations." (quotation omitted)).

*          *          *

CONCLUSION

For the reasons explained above, Defendants' motion to dismiss on statute of limitations grounds is granted, and the sole claim is dismissed with prejudice.  Because amendment cannot cure the statute of limitations defect, Barnickle is denied leave to amend.  *See Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000) ("Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations.").  The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

*/s/ Sanket J. Bulsara*

Date:  February 3, 2026
     Central Islip, New York

SANKET J. BULSARA
United States District Judge

15